*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

12FIVE CAPITAL, LLC,

        Plaintiff-Appellee,

v

IMG MARINE, LLC,

        Defendant-Appellant,

and

STEVEN IVANKOVICH,

        Defendant.

UNPUBLISHED
March 10, 2026
2:42 PM

No. 371165
Leelanau Circuit Court
LC No. 23-011132-CB

Before: LETICA, P.J., and BORRELLO and RICK, JJ.

PER CURIAM.

In this dispute involving the conversion of collateral and interference with a contract, defendant, IMG Marine, LLC, appeals by leave granted[1] the order denying defendant's motion to set aside the $2,685,250 default judgment entered in favor of plaintiff, 12Five Capital, LLC. On appeal, defendant contends that plaintiff's failure to provide it with notice of the entry of default and notice of the request for entry of a default judgment were procedural irregularities that amounted to good cause and relieved it of the obligation to establish a meritorious defense. We reverse and remand for proceedings consistent with this opinion.

## I. FACTUAL AND PROCEDURAL HISTORY

---

[1] *12Five Capital, LLC v IMG Marine, LLC*, unpublished order of the Court of Appeals, issued January 17, 2025 (Docket No. 371165).

On December 15, 2023, plaintiff filed a complaint against defendant alleging conversion, both common law and statutory, and tortious interference with contract. Specifically, plaintiff asserted that it entered into a financing agreement with a third-party, Aquaform Watercraft, LLC (Aquaform), a manufacturer of boats and boat parts. In this contract, plaintiff agreed to advance funds to Aquaform to buy necessary inventory and supplies required to fill orders. In exchange, Aquaform assigned to plaintiff its purchase orders as well as a security interest in all existing or after-acquired accounts. As part of the financing agreement, plaintiff obtained the first–priority purchase-money security interest in all of Aquaform's personal property. By September 2023, Aquaform allegedly owed $3,770,400.52 to plaintiff for advances.

After it was asserted that Aquaform defaulted on its agreement with plaintiff, defendant through its manager, Steven Ivankovich, began to negotiate the purchase of some ownership interest in Aquaform. In the course of the negotiations, plaintiff purportedly provided Ivankovich and defendant with specific details on Aquaform's debt to plaintiff and the collateral that secured the debt. According to plaintiff, defendant and Ivankovich negotiated in bad faith and transported some of the collateral at issue to Florida and Dubai. Specifically, defendant's actions were designed to acquire information regarding plaintiff's collateral, delay plaintiff's efforts to protect and recover the collateral, and to secure defendant's advantage with Aquaform. Plaintiff further alleged that defendant and Ivankovich took 12 boats with a stated wholesale value of at least $585,000. It was also claimed that defendant seized other collateral comprised of four boats and boat parts worth at least $310,000 and caused that collateral to be shipped to Dubai. Ultimately, plaintiff asserted that defendant and Ivankovich took or misdirected at least $895,000 in collateral.

In the underlying complaint, plaintiff acknowledged that it had filed suit against Aquaform in a separate lawsuit. In that litigation, the trial court entered an order in October 2023 in which it gave plaintiff the immediate right to possess all the personal property that Aquaform had pledged as collateral. The language of the order seemingly gave Aquaform the highest priority over others by stating that "and any other individual or entity who may have possession of the Collateral hereinafter described must relinquish possession . . . ." The trial court further stated in that order that plaintiff could serve the order by first class mail on any individual or entity that had possession of the collateral. Plaintiff claimed to inform defendant and Ivankovich of the order and demanded return of the collateral, but they refused the demand.

In the complaint in this action, plaintiff sued defendant and Ivankovich for conversion of the collateral by taking the boats and boat parts and dispersing them to Florida and Dubai. Plaintiff also alleged that defendant and Ivankovich intentionally interfered with plaintiff's contractual relations with Aquaform by taking and concealing the collateral. It should be noted that, in the complaint, plaintiff identified the value of 12 boats at $585,000, and the value of four boats and boat parts at $310,000 for a total of $895,000. However, in the prayer for relief, plaintiff did not identify a specific total valuation of the collateral but sought damages "in an amount exceeding $25,000 to be determined at trial, plus its costs, attorney fees, and such other relief this [c]ourt deems appropriate."

On February 2, 2024, plaintiff filed a request for default against defendant. This request was made through the State Court Administrative Office's (SCAO) Standard Form MC 07a. This form order not only requested entry of a default against defendant but also calculated the amount of damages ($2,685,000), costs ($175), and attorney fees or other expenses ($75) for a total

judgment of $2,935,000.[2]  By signing the default judgment, plaintiff's counsel certified the statements on the form order were true, including that: (1)  the "amount requested for damages is not greater than the amount stated in the complaint", (2) the defaulting party was not an infant or incompetent person, (3) the defaulting party was not in the military, and (4) the request was premised on personal knowledge.

On the back of the standard form, the court clerk signed off on the entry of the default. And below the default, the circuit court judge signed off on the calculation of the final default judgment amount of $2,935,000 and the judgment interest at $18,675.88 through February 2, 2024. Below the judge's signature, the standard form contains a use note that states, "The party who sought the default and default judgment is responsible for serving all parties in accordance with MCR 2.603(A)(2) and MCR 2.604(B)(4)."  Following the use note, there is a certificate of mailing, which states:

> I served a copy of this default request, entry, and judgment on the parties or their attorneys by first-class mail addressed to their last-known addresses as defined by MCR 2.107(C)(3).  I declare under the penalties of perjury that this certificate of mailing has been examined by me and that its contents are true to the best of my information, knowledge, and belief.

Below this certification, there is a line for the date and signature.  However, these lines are blank; no date or signature is provided.  There is no indication that the mailing occurred.  (*Id.*)  With this form order default, plaintiff's counsel submitted a letter addressing how it calculated the sum to make it certain.  The letter referred to the $895,000 and the request for treble damages for statutory conversion, resulting in $2,685,000.

The trial court held a hearing on February 14, 2024.  The trial court considered motions from the three related cases at that hearing, which included plaintiff's motion to enter the default judgment in this case.  Defendant's counsel did not appear at that hearing.

At the hearing, plaintiff's counsel argued that defendant was served on January 2, 2024. The time for defendant to file an answer had passed but it had not defended or otherwise responded to the action.  Plaintiff claimed that it alleged a sum certain, specifically "a minimum of $895,000" in collateral that was converted, and the statutory conversion claim applied treble damages. Therefore, plaintiff requested $2,685,000 plus costs and fees.  The trial court ruled:

> I have had a chance to review the complaint.  Service was completed in accordance with MCR 2.105.  The appropriate timelines have passed.  No responsive pleading has been filed by the defendant.  In reviewing the complaint in that case, a sufficient nexus does exist between the relief sought and the allegations contained in the pleading.  The detailed allegations do allow for a proper determination of a sum certain as well.  That amount is what is being sought.

---

[2] As will be discussed, these amounts do not add up to $2,935,000.  And this amount is indeed greater than the various valuations set forth in the complaint.

Additionally, the relief sought also is subject to treble damages pursuant to MCL 600.2919(a). Based on the circumstances of this case and the related ones that we're also here for, treble damages are absolutely appropriate. I find the conduct of these defendants shows complete bad faith and a complete disregard for the legal process, and as such, I will grant the request for a default judgment.

On February 19, 2024, plaintiff's counsel submitted another letter to the court clerk. This letter explained that there was a scrivener's error that caused the judgment to enter in an amount $250,000 more than plaintiff was entitled. Therefore, plaintiff submitted a new default form that sought a total judgment of $2,685,250 entered by the court.

On February 29, 2024, plaintiff filed an ex parte motion for alternate service of Ivankovich. Plaintiff alleged that it served defendant, Ivankovich's company, on January 2, 2024, and defendant failed to answer or defend, resulting in the entry of the default judgment on February 14, 2024. But Ivankovich was unable to be served because he lived in a penthouse for which access was restricted. The process server could not directly access the location. The penthouse's management company notified Ivankovich of the attempted service, but Ivankovich advised that he was "out of town" with an uncertain return date. Because service could not be achieved, plaintiff sought alternate means. On February 29, 2024, the trial court signed an order for alternative service of Ivankovich. Specifically, a copy of "the documents" could be left with the management company at Ivankovich's residence.

On March 5, 2024, the trial court signed and the clerk filed an amended default issued on the SCAO standard form. This order of default provided that the damages amount was $2,685,000, the costs were $175, the attorney fee or other cost was $75 for a total judgment of $2,685,250. Again, the default entry was signed by the court clerk, and the court signed the judgment amount and interest calculation. But plaintiff's counsel again failed to certify that the document was mailed to the parties or their attorneys.

The circuit court register of actions shows that the requests for entry of default included e-filed proof of services. Specifically, plaintiff e-filed the notice of a hearing on its motion requesting a default and entry of judgment for a sum certain on February 5, 2024. The notice was for a hearing to be held on February 12, 2024. On February 9, 2024, plaintiff amended its notice for the hearing to show that the hearing would be held on February 14, 2024. The e-filed notices did not include proofs of service upon defendant. Instead, the notices were sent to three attorneys at the law firm representing plaintiff.

On March 26, 2024, defendant moved to set aside the default judgment. On the same day, plaintiff served a copy of the amended default judgment by mailing a copy and proof of service to defendant, and filed the proof of service with the trial court.

The trial court held a hearing on the motion to set aside the default judgment. Defendant argued that it established a procedural irregularity that amounted to good cause to set aside the default. Specifically, plaintiff failed to give it notice of the entry of the default and failed to give it notice of the default judgment. Defendant acknowledged that it only got notice of entry of the default judgment *after* it filed its motion to set aside the default judgment. Defendant opined that the defects in notice were by themselves sufficient to warrant setting aside the default judgment.

Defendant also argued that the default judgment was not for a sum certain because plaintiff's complaint did not include attachments that established the values of the items purportedly converted. Finally, it argued that, even if it needed a meritorious defense, it met that requirement. Specifically, it cited the verified statement by Ivankovich that it attached in support of its motion. In that verified statement Ivankovich averred that defendant did not convert any collateral and did not tortiously interfere with plaintiff's agreement with Aquaform. Ivankovich also asserted that the trial court did not have personal jurisdiction over both defendants.

In response, plaintiff stated that the court rules do not require notice of a request to enter a default judgment under the facts of this case because defendant did not appear, the request was not different in kind from that sought in the complaint, and the request was for a sum certain. On that basis, plaintiff asserted that there were no procedural errors. Finally, it stated that it served notice of the default judgment on March 25, 2024, after it corrected the default judgment to reflect the appropriate amount without the scrivener's error.

Plaintiff maintained that caselaw establishing that lack of notice obviates the need to show a meritorious defense did not apply because no notice was required in this case. In any event, it stated, the caselaw was distinguishable because the purpose of the notice was to allow the defaulting party to contest the amount of damages and this case involved a sum certain. In plaintiff's view, defendant still had to show that it had a meritorious defense in order to set aside the default. Addressing the meritorious defense, plaintiff noted that Ivankovich's verified statement showed that defendant conducted business in Michigan, which established that the trial court could properly take jurisdiction over defendant under Michigan's long-arm statute. It maintained that the other purported defenses were irrelevant. Specifically, it stated that the order granting plaintiff the immediate right to possess its collateral was binding on defendant.

The trial court rejected defendant's contention that it could not exercise personal jurisdiction over defendant under Michigan's long-arm statute. The court explained that defendant did business in Michigan and was alleged to have committed torts in Michigan, which met the requirements of Michigan's long-arm statute. It also determined that defendant had sufficient contacts with Michigan to meet the requirements of due process.

The trial court next addressed the requirements for setting aside default. It determined that the court rules did not require any notice to be sent to defendant before entry of the default. The court also opined that Ivankovich and defendant had actual notice that "these cases"—referring to the series of cases involving the disintegration of Aquaform—were "going on." From that, the trial court determined that entry of the default judgment was proper and there was no substantial defect or irregularity in the entry of default. The court further ruled that defendant failed to establish a meritorious defense. For all these reasons, it denied the motion. As noted, we granted defendant's application for leave to appeal.

## II. STANDARD OF REVIEW

The appellate court reviews a trial court's denial of a request to set aside a default or a default judgment for an abuse of discretion. *Epps v 4 Quarters Restoration, LLC*, 498 Mich 518, 528; 872 NW2d 412 (2015); *Amco Builders & Developers, Inc v Team Ace Joint Venture*, 469 Mich 90, 94; 666 NW2d 623 (2003). An abuse of discretion occurs when the trial court's decision

falls outside the range of reasonable and principled outcomes. *Tindle v Legend Health, PLLC*, 346 Mich App 468, 474; 12 NW3d 667 (2023) (citation omitted).

## III. ANALYSIS

Defendant contends that the trial court abused its discretion by denying its request to set aside the default judgment. We agree. The trial court erred when it determined that plaintiff complied with the notice requirements, and therefore, the denial of the request to set aside the default constituted an abuse of discretion. Moreover, the trial court's error warrants setting aside the default without the need to establish a meritorious defense, the failure to comply with notice requirements results in the deprivation of due process.

The interpretation and application of the court rules is reviewed de novo. *Krieger v Dep't of Environment, Great Lakes & Energy*, 348 Mich App 156, 170; 17 NW3d 700 (2023). The words of the court rule are given their plain and ordinary meanings. *Lech v Huntmore Estates Condo Ass'n (On Remand)*, 315 Mich App 288, 290; 890 NW2d 378 (2016). The intent of the court rule is derived from the rule itself and from its place within the structure of the Michigan Court Rules as a whole. *Id*. (quotation marks and citation omitted).

Although a determination of a claim on the merits is favored, Michigan policy generally is against setting aside defaults and defaults judgments that have properly been entered. *Alken-Ziegler, Inc v Waterbury Headers Corp*, 461 Mich 219, 229; 600 NW2d 638 (1999). The purpose of default procedures is to maintain current dockets, dispose of cases expeditiously, and prevent dilatory defendants from impeding the plaintiff from establishing the claim. *Bigelow v Walraven*, 392 Mich 566, 576; 221 NW2d 328 (1974). "It is an established principle of Michigan law that a default settles the question of liability as to well-pleaded allegations and precludes the defaulting party from litigating that issue." *Lakeside Retreats, LLC v Camp No Counselors, LLC*, 340 Mich App 79, 89; 985 NW2d 225 (2022) (quotation marks and citation omitted). On the contrary, a default judgment reduces the default to a judgment awarding monetary damages. *Id*. "A defaulted party retains the right to challenge the amount of damages, but the defaulted party may no longer challenge liability." *Id*. "Traditionally, therefore, a party is not entitled to notice in advance of taking a default but is entitled to notice in advance of a default judgment for purposes of challenging the amount of damages." *Id*. at 89-90.

The purpose of notice is generally to give the opposing party the opportunity to be heard. *White v Sadler*, 350 Mich 511, 518; 87 NW2d 192 (1957). There is no right to be heard before entry of a default because the taking of a default is an ex parte proceeding and advance notice would be an idle and impractical thing. *Id*. at 518-519. After the entry of default, however, it is important to provide the defaulting party with notice so that he or she may have the opportunity to timely take steps to set aside the default. *Id*. at 519. Additionally, the notice of intent to request a default judgment provides the opponent with the opportunity to dispute the damages. *Brooks Williamson & Assocs v Mayflower Constr Co*, 308 Mich App 18, 28l 863 NW2d 333 (2014). This construction of the default judgment court rule "prevents a party from concealing notice in the text of a document that might not be given close or immediate attention" before its entry and allows a defendant the fair opportunity to contest damages where "the defendant might otherwise not dispute liability." *Id*. For that reason, this Court has held that the failure to give the notice required under MCR 2.603(A)(2) constitutes a "substantial defect in the proceeding meriting a finding of

good cause . . . ." *Bradley v Fulgham*, 200 Mich App 156, 158-159; 503 NW2d 714 (1993).  And the meritorious defense requirement in MCR 2.603(D) need not be fulfilled for a defaulted party to prevail in setting aside a default judgment when the notice provisions in the court rules are not satisfied.  *Brooks Williamson & Assocs*, 308 Mich App at 32-35.

> [W]ithout a showing that a party has received notice of the request for entry of a default judgment, the requirement that a party must show a meritorious defense in order to set aside a default judgment runs afoul of the party's constitutional rights.  A party served with a complaint who does not dispute liability may reasonably choose not to respond to the complaint because the party lacks a defense to the claim.  Nevertheless, that party is still entitled to contest the plaintiff's asserted damages and is entitled to notice of a request for entry of a default judgment in order to exercise that opportunity.  The failure to provide notice denies that required opportunity.  [*Id*. at 35-36 (citation omitted).]

Thus, the failure to give notice violates the basic demands of due process of law.  *Id*.  When a party does not receive notice of the opponent's intent to request a default judgment, application of the requirement that a party show a meritorious defense constitutes the deprivation of the constitutional right to due process and is unenforceable.  *Id*. at 36.

> MCR 2.603(A) addresses entry of default:
>
> (A) Entry of Default; Notice; Effect.
>
> (1) If a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules, the clerk must enter the default of that party if that fact is:
>
> (a) known to the clerk of the court, or
>
> (b) verified in the manner prescribed by MCR 1.109(D)(3) and filed with the court in a request for default.
>
> (2) Notice that the default has been entered must be sent to all parties who have appeared and to the defaulted party.  If the defaulted party has not appeared, the notice to the defaulted party may be served by personal service, by ordinary first-class mail at his or her last known address or the place of service, or as otherwise directed by the court.
>
> The notice must be sent by the party who sought entry of the default.  Proof of service and a copy of the notice must be filed with the court.
>
> (3) After the default of a party has been entered, that party may not proceed with the action until the default has been set aside by the court in accordance with subrule (D) or MCR 2.612.

The court rule continues by addressing default judgments, MCR 2.603(B):

-7-

(B) Default Judgment.

(1) Notice of Request for Default Judgment.

(a) A party requesting a default judgment must give notice of the request to the defaulted party, if

(i) the party against whom the default judgment is sought has appeared in the action;

(ii) the request for entry of a default judgment seeks relief different in kind from, or greater in amount than, that stated in the pleadings; or

(iii) the pleadings do not state a specific amount demanded.

(b) The notice required by this subrule must be served at least 7 days before entry of the requested default judgment.

(c) If the defaulted party has appeared, the notice may be given in the manner provided by MCR 2.107. If the defaulted party has not appeared, the notice may be served by personal service, by ordinary first-class mail at the defaulted party's last known address or the place of service, or as otherwise directed by the court.

(d) If the default is entered for failure to appear for a scheduled trial, notice under this subrule is not required.

(2) Default Judgment Entered by Clerk. On written request of the plaintiff verified under MCR 1.109(D)(3) as to the amount due, the clerk may sign and enter a default judgment for that amount and costs against the defendant, if

(a) the plaintiff's claim against a defendant is for a sum certain or for a sum that can by computation be made certain;

(b) the default was entered because the defendant failed to appear;

(c) the defaulted defendant is not an infant or incompetent person; and

(d) the damages requested is not greater than the amount stated in the complaint.

(3) Defendant Judgment Entered by Court. In all other cases, the party entitled to a default judgment must file a motion that asks the court to enter the default judgment.

(a) A default judgment may not be entered against a minor or an incompetent person unless the person is represented in the action by a conservator, guardian ad litem, or other representative.

(b) If, in order for the court to enter a default judgment or to carry it into effect, it is necessary to

(i) take an account,

(ii) determine the amount of damages,

(iii) establish the truth of an allegation by evidence, or

(iv) investigate any other matter, the court may conduct hearings or order references it deems necessary and proper, and shall accord a right of trial by jury to the parties to the extent required by the constitution.

(4) Notice of Entry of Default Judgment. The party who sought entry of the default judgment must promptly serve all parties with the default judgment. The default judgment shall be mailed to the defendant's last known address or the address of the place of service. Proof of service must be filed with the court.

(C) Nonmilitary Affidavit. Nonmilitary affidavits required by law must be filed before judgment is entered in actions in which the defendant has failed to appear.

(D) Setting Aside Default or Default Judgment.

(1) A motion to set aside a default or a default judgment, except when ground on lack of jurisdiction over the defendant, shall be granted only if good cause is shown and a statement of facts showing a meritorious defense, verified in the manner prescribed by MCR 1.109(D)(3), is filed.

(2) Except as provided in MCR 2.612, if personal service was made on the party against whom the default was taken, the default, and the default judgment if one has been entered, may be set aside only if the motion is filed

(a) before entry of a default judgment, or

(b) if a default judgment has been entered, within 21 days after the default judgment was entered.

(3) In addition, the court may set aside a default and a default judgment in accordance with MCR 2.612.

(4) An order setting aside the default or default judgment must be conditioned on the defaulted party paying the taxable costs incurred by the other party in reliance on the default or default judgment, except as prescribed in MCR 2.625(D). The order may also impose other conditions the court deems proper, including a reasonable attorney fee.

The trial court's clerk must enter a default against a party who has "failed to plead or otherwise defend" an action if the court's clerk knows that fact or if the opposing party has requested the default. See MCR 2.603(A)(1). Once the court's clerk enters the default, the party who sought entry of the default bears the burden to provide notice of the default:

Notice that the default has been entered must be sent to all parties who have appeared and to the defaulted party. If the defaulted party has not appeared, the notice to the defaulted party may be served by personal service, by ordinary first-class mail at his or her last known address or the place of service, or as otherwise directed by the court.

The notice must be sent by the party who sought entry of the default. Proof of service and a copy of the notice must be filed with the court. [MCR 2.603(A)(2).]

In this case, plaintiff submitted the SCAO standard form that included sections for a request for entry of default, the actual entry of default, and the entry of a default judgment. Plaintiff requested entry of a default against defendant on February 2, 2024, for failure to appear. The trial court's clerk entered the default on February 15, 2024, and the trial court signed the default judgment on February 14, 2024. On that form, plaintiff failed to fill in any information on the section for a certificate of mailing as required by MCR 2.603(A)(2) ("If the defaulting party has not appeared, the notice to the defaulted party may be served by personal service, by ordinary first-class mail at his or her last known address or the place of service, or as otherwise directed by the court."). This defect constituted good cause for purposes of setting aside the default judgment. *Bradley*, 200 Mich App at 158-159.

Additionally, this request for entry of a default judgment did not comport with MCR 2.603(B)(1)(a)(ii). Specifically, when requesting a default judgment, notice must be given to the defaulted party if the relief requested is "different in kind from, or greater in amount than, that stated in the pleadings[.]" The SCAO MC 07a form submitted by plaintiff sought an amount greater than the valuations presented in the complaint. Regardless of plaintiff's characterization of the amount as a scrivener's error, this requested amount in excess of the addition of the values set forth in the complaint triggered plaintiff's obligation to provide notice, and it did not comply. Accordingly, this omission constituted a deprivation of due process that alleviated the defense requirement to present a meritorious defense. *Brooks Williamson & Assocs*, 308 Mich App at 32-35. Under the circumstances, the trial court's denial of the motion to set aside the default judgment constituted an abuse of discretion.[3]

Reversed and remanded for proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Anica Letica
/s/ Stephen L. Borrello
/s/ Michelle M. Rick

---

[3] Because a meritorious defense need not be established, there is no need to address the allegation that a meritorious defense was established premised on a lack of jurisdiction.